**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Jeffrey Machado**

v.

Case No. 1:25-cv-42-PB-TSM
Opinion No. 2026 DNH 133

**Adam R. Telle,**
**Acting Secretary of the Army**[1]

## MEMORANDUM AND ORDER

Plaintiff Jeffrey Machado obtained a favorable decision from this Court which set aside the Army Discharge Review Board ("the Board")'s refusal to upgrade his discharge characterization. See Machado v. Driscoll, 2026 DNH 029, 2026 WL 851209 (D.N.H. Mar. 26, 2026). He now seeks reimbursement for attorney's fees and costs incurred under the Equal Access to Justice Act ("EAJA"). See 28 U.S.C. § 2412(d). I grant his motion in part.

## I. BACKGROUND[2]

In September 2014, after nearly four years of service in the Army, Machado was discharged from duty with an "Other Than Honorable"

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary of the Army Adam R. Telle is automatically substituted for former Secretary Daniel P. Driscoll. See Fed. R. Civ. P. 25(d).

[2] I reiterate the case's history only to the extent relevant to Machado's motion for fees and costs. For a more detailed background, see my prior order. See Machado, 2026 WL 851209.

characterization. Machado, 2026 WL 851209, at *5. Machado's discharge and its characterization resulted from disciplinary proceedings initiated against him after a series of domestic altercations with his now-former wife. See id. at *4-5. After being diagnosed with major depressive disorder, post-traumatic stress disorder ("PTSD"), and traumatic brain injury ("TBI") following his separation from service, Machado applied for review of his discharge. Id. at *5. He asked the Board to upgrade his discharge characterization to "Honorable" in light of these post-separation diagnoses, among other evidence. Id. The evidence he presented in support of his application included a medical report and sworn affidavit by Dr. Sandra A. Dixon, Psy.D., a psychologist who corroborated his diagnoses and opined that the misconduct that triggered his discharge was the result of PTSD. Id. The Board denied his initial application in July 2018 and his subsequent reapplication in July 2019. Id. at *5-6.

The Board then reconsidered Machado's discharge characterization one more time, following a settlement approved by the District of Connecticut in 2021. Id. at *6. That settlement involved a class action brought by Army veterans who claimed that the Board had arbitrarily denied discharge upgrades to former servicemembers diagnosed with PTSD and PTSD-related conditions. See Kennedy v. Whitley, 539 F. Supp. 3d 261, 263-64 (D. Conn. 2021). Specifically, the class alleged that the Board had failed to give "liberal

consideration" to applications for discharge upgrades from servicemembers with such conditions as required by statutory and administrative directives. Id. at 264 (citing 10 U.S.C. § 1553; Hagel Memorandum[3]; Kurta Memorandum[4]). The settlement agreement resolving the case required automatic, renewed review of applications which, like Machado's, were previously denied despite raising issues related to PTSD, but this time with the appropriate degree of deference. Id. at 267.

Pursuant to the Kennedy settlement, the Board notified Machado in 2021 that it would reconsider his application for a discharge upgrade. See Machado, 2026 WL 851209, at *6. At the Board's invitation, Machado submitted extensive evidence to supplement his original application, including affidavits from him and his wife describing his progress in recovery

---

3 Memorandum from Charles T. Hagel to Secretaries of the Military Departments, Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder (Sept. 3, 2014). See Machado, 2026 WL 851209, at *2 for an explanation of the significance of this memorandum to this case.

4 Memorandum from Anthony M. Kurta to Secretaries of the Military Departments, Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment (Aug. 25, 2017). See Machado, 2026 WL 851209, at *2 for an explanation of the significance of this memorandum to this case.

and a letter from a social worker describing his persistent engagement with psychotherapy. Id. He also expressly "incorporate[d] [his prior] submissions by reference." Id. In a mostly boilerplate decision, the Board nonetheless ruled against Machado, relying entirely on the opinion of its medical advisor that the "severe physical assaults that were the basis for [his] separation[] are not part of the natural history or sequelae of PTSD, TBI or other behavioral health conditions" and that "the available evidence did not support a conclusion that" Machado's conditions "outweighed the unmitigated basis for [his] separation." Id. The Board nowhere in its decision addressed Dr. Dixon's contrary opinion. See id.

Machado sued in this Court in January 2025, challenging the Board's decision under the Administrative Procedure Act ("APA") and the Fifth Amendment's Due Process Clause. See Doc. 1 at 20-24. Adhering to this Court's local rules for administrative review cases, counsel for the Board compiled and filed the applicable administrative record, Doc. 14; Doc. 18, and the parties cross-moved for summary judgment, Doc. 17; Doc. 25. I granted summary judgment to Machado and denied the government's corresponding motion. See Machado, 2026 WL 851209, at *13. In doing so, I generally agreed with Machado's arguments that the Board violated the APA by entirely failing to engage with one of his principal arguments asserted in his post-Kennedy application; that the government failed to liberally consider his

application by entirely neglecting to address key evidence; and that it improperly discounted other evidence due to its insufficiently charitable approach to the behavioral effects of PTSD and TBI. See id. at *8-12. I ultimately rejected Machado's procedural due process claim, however, concluding that the Board's inadequate consideration of Machado's arguments nonetheless surmounted the low bar of constitutional due process. See id. at *12.

## II. ANALYSIS

The EAJA establishes an exception to the general rule in the United States that each party must bear its own attorney's fees. See Castañeda-Castillo v. Holder, 723 F.3d 48, 56 (1st Cir. 2013). Under certain circumstances, a party that prevails against the United States in a civil action is eligible to receive a fee award for reasonable costs incurred during the course of litigation. See 28 U.S.C. § 2412(d). One condition for a fee award is that the position of the United States in the litigation not be substantially justified. Id. § 2412(d)(1)(A). Here, the government argues that its position was substantially justified such that no fees should be awarded or, in the alternative, that any fee award should be discretionarily reduced by ten percent given the failure of Machado's due process claim. I address each point in turn.

## A. Substantial Justification

Under the EAJA, "a court shall award" attorney's fees and other costs incurred by "a prevailing party" in "any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Id. Courts have distilled the EAJA's fee award requirements into a four-part test for eligibility: (1) the claimant must be a "prevailing party"; (2) the government's position must not have been "substantially justified"; (3) no "special circumstances make an award unjust"; and (4) the fee application must be timely. See Comm'r, I.N.S. v. Jean, 496 U.S. 154, 158 (1990). Here, the government only contests Machado's assertion that its position was not substantially justified.

"It is well-settled that the government bears the burden of establishing that its position was substantially justified." Castañeda-Castillo, 723 F.3d at 73 (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)). To do so, the government must show, by a preponderance of the evidence, that its position "ha[d] a reasonable basis in both law and fact." Id. While such a standard does not require the government to show that its position was "justified to a high degree," the government must at least demonstrate that "a reasonable

person could think [its position] correct." Michel v. Mayorkas, 68 F.4th 74, 78 (1st Cir. 2023) (internal quotations omitted).

For the purposes of this inquiry, the "position of the United States" encompasses "the position taken by the United States in the civil action," as well as "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). The government's position is therefore not examined in "atomized line-items" corresponding to the various stages of the litigation; rather, the EAJA "favors treating a case as an inclusive whole." Jean, 496 U.S. at 161-62. Where, as here, a prevailing party requests a fee award for expenses incurred during civil litigation contesting agency findings, the reviewing court will "evaluate the government's pre-litigation and litigation positions holistically." Michel, 68 F.4th at 79. In other words, the government "must justify the positions it took both during the litigation and the agency proceedings that preceded that litigation." Castañeda-Castillo, 723 F.3d at 73.

However reasonable its positions may have been before this Court, the government's claim of substantial justification is unavailing in light of the Board's untenable position in the underlying administrative proceedings that gave rise to this case. As I noted in my decision on summary judgment, the Board flatly failed to "take a fresh look at" Machado's application for a discharge upgrade as it promised and, more importantly, as it was required

to do by the Kennedy settlement. See Machado, 2026 WL 851209, at *7; AR 110; 539 F. Supp. 3d at 267. In failing to review Machado's application de novo, the Board did not merely interpret Machado's evidence or its persuasiveness under the relevant standard in a reasonable-but-incorrect manner; it largely failed to address either at all. The government must fulfill its procedural obligations under the law at the time of its agency proceedings. See Poole v. Rourke, 779 F. Supp. 1546, 1563-64 (E.D. Cal. 1991) (finding that "the government's position was not justified" where "the administrative record does not reflect that the Air Force ever considered" evidence to which "it was required to give serious consideration"); cf. Silva v. United States, 138 Fed. Cl. 325, 333 (2018) (concluding that the government's position was substantially justified where "all the actions taken by the Government prior to litigation were taken in accordance with the regulations and policies in effect at the time"). Thus, the Board's failure to engage with all the evidence presented to the extent required by Kennedy undermines the Board's claim that it was substantially justified in again denying Machado's application post-Kennedy. And because the substantial justification of the Board's position depends upon the reasonableness of its positions in both this litigation and the prior agency proceedings, see Castañeda-Castillo, 723 F.3d at 73, I find that the Board's position was not substantially justified.

**B. Reduction of Fee Award**

Notwithstanding that conclusion, I am also required to "equitably reduce[] the overall award to reflect the plaintiff['s] less than complete success and the extent to which their legal work was aimed at contesting the government's reasonable position." McDonald v. Sec'y of Health & Hum. Servs., 884 F.2d 1468, 1480 (1st Cir. 1989) (emphasis in original). In deciding whether unsuccessful claims brought by a prevailing party should entail a correspondingly reduced fee award, courts must ascertain whether "different claims for relief are not interconnected—that is, when the claims rest on different facts and legal theories . . . . Attorneys' fees normally should not be awarded for time spent litigating (or preparing to litigate) unsuccessful, severable claims." Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 339 (1st Cir. 1997) (involving the fee-shifting provisions of 42 U.S.C. § 1988 rather than 28 U.S.C. § 2412(d), though the logic of interconnectedness naturally extends to the EAJA context). If an unsuccessful claim is severable from successful claims, the fee award can be reduced according to the court's "equitable judgment," without the need for a precise determination of the proportion of hours spent on the different claims, as such an assessment is "necessarily somewhat arbitrary." McDonald, 884 F.2d at 1480. Cf. García v. State Ins. Fund Corp., 169 F.4th 13, 29 (1st Cir. 2026) (noting that, in the

context of Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k), "analyzing the degree of success obtained is not an exact science").

Machado seeks $22,985 in attorney's fees and costs incurred, representing 54 hours of attorney work at $255 per hour[5]; 83 hours of attorney work at $100 per hour; and a single filing fee of $405. Doc. 33 at 7. As the government notes, while Machado attained a complete grant of his motion for summary judgment, see Machado, 2026 WL 851209, at *13, he did not prevail on one of his theories advanced to support that result—namely, his procedural due process claim, see id. at *12. The due process claim is sufficiently disconnected from the successful APA claims to warrant a reduction in the fee award, given that the legal standards used to adjudicate APA claims and due process claims are analytically distinct. See id. at *8-12 (explaining that APA claims necessitate a relatively detailed examination of the weight given by agencies to various pieces of evidence, citing Poole v. Harvey, 571 F. Supp. 2d 120, 125 (D.D.C. 2008); Mahoney v. Del Toro, 2023

[5] The EAJA's statutory cap on fee awards for attorney's fees at $125 per hour, see 28 U.S.C. § 2412(d)(2)(A), can be adjusted when "the court determines that an increase in the cost of living . . . justifies a higher fee," see id. Machado calculates that "[m]ultiplying $125 for the March 1996 start date [when the EAJA's attorney's fees limit was last amended by Congress, see Contract With America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847 (1996)] by the National Index ratio for July 2025, the mid-point of this litigation, yields a CPI-adjusted rate of $259.35, which Plaintiffs will round down to $255." Doc. 33 at 6. The government does not contest the validity of this assessment.

WL 3587285, at *10 (D. Mass. May 22, 2023) (quoting Motor Vehicle Mfrs. Assoc. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52 (1983)), whereas the due process claim requires only an analysis of whether minimally adequate notice and opportunity to be heard have been provided, citing Bos. Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 50 (1st Cir. 2016) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976))). I thus agree with the government that a commensurate reduction in attorney's fees awarded is merited to account for the time spent developing that claim. A ten percent reduction in attorney's fees is an appropriate estimate of that amount.

## III. CONCLUSION

Machado's motion for fees and costs, Doc. 33, is granted in part and denied in part. Machado is awarded $20,322 in attorney's fees and $405 in costs incurred.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 18, 2026

cc: Counsel of Record